| Seitz v Marcum LLP |
| :---: |
| 2024 NY Slip Op 33048(U) |
| August 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 153725/2021 |
| Judge: Robert R. Reed |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 43

-------------------------------------------------------------------------X

GARY F SEITZ, in his capacity as Trustee for City Line
Behavioral Healthcare, LLC and Life of Purpose-
Pennsylvania, LLC,

|  | | |
|---|---|---|
| **INDEX NO.** | 153725/2021 |
| **MOTION DATE** | 06/18/2021 |
| **MOTION SEQ. NO.** | 001 |

Plaintiff,

- v -

MARCUM LLP,

Defendant.

**DECISION + ORDER ON
MOTION**

-------------------------------------------------------------------------X

**HON. ROBERT R. REED:**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17

were read on this motion to/for                                     DISMISSAL

This action arises from defendant Marcum LLP's (Marcum) allegedly negligent services

as auditor and accountant for now-bankrupt entities City Line Behavioral Healthcare, LLC,

formerly known as Liberation Behavioral Health, LLC (LBH), and its subsidiary, Life of

Purpose-Pennsylvania, LLC, formerly known as Liberation Way, LLC (Liberation Way)

(collectively, the Liberation companies). Plaintiff Gary F. Seitz, as trustee of the bankruptcy

estates of the Liberation companies, asserts four claims against defendant for accounting

malpractice, breach of fiduciary duty, breach of contract, and unjust enrichment. In this motion,

defendant moves pursuant to CPLR 3211 (a) (5) and (a) (7) to dismiss the complaint in its

entirety. For the following reasons, the motion is granted, and the complaint is dismissed.

## I.        BACKGROUND

The following facts are taken from plaintiff's complaint and are assumed to be true for

the purposes of this motion.

153725/2021   SEITZ, GARY F vs. MARCUM LLP
Motion No.  001

Page 1 of 10

[* 1]

The Liberation companies operated three facilities in Pennsylvania that provided treatment for drug and alcohol addiction. Liberation Way was a single-member limited liability company owned and controlled by LBH, which was, in turn, managed by a five-person board of directors.

From the very first year of its founding in 2015, the CEO, CFO, and COO and President of LBH began engaging in fraudulent schemes including

> "(i) fraudulently billing patients and insurance companies for treatments that were not provided, not medically necessary or were substandard; (ii) paying for patients to fraudulently obtain high-end insurance policies and fraudulently billing the insurance companies under those policies; (iii) generating kickbacks by sending thousands of medically unnecessary urine tests from the Company's patients to co-conspiring labs in Florida; (iv) housing clients at sober-living homes associated with the Company without an inpatient license; and (v) failing to comply with [the Pennsylvania Department of Drug and Alcohol Program's] regulations and licensing requirements" (compl ¶ 28).

In addition, the Liberation companies "manipulated [their] financial statements, including by overstating [their] revenue collection figures" (*id.* ¶ 29).

Around May 2016, the Liberation companies engaged defendant Marcum to perform accounting and auditing services for them.

In 2016, Independent Blue Cross (IBC), an insurance company that insured many of the Liberation companies' patients, began conducting an audit of the Liberation companies' claims and billing practices. Through the audit, IBC discovered the fraud and other misconduct that the Liberation companies committed between July 2015 and late 2017.

IBC's audit was known to the Liberation companies' officers, directors, and critical advisors, and legal counsel to the Liberation companies disclosed the audit to defendant by no later than March 31, 2017.

**153725/2021 SEITZ, GARY F vs. MARCUM LLP**
**Motion No. 001**

Page 2 of 10

2 of 10

[* 2]

In December 2016, non-party Fulcrum Equity Partners, Inc. (Fulcrum) offered to purchase the Liberation companies and entered into a period of negotiation and diligence.

Under the proposed transaction, certain members of LBH would sell their membership units in LBH to LBH Holdings, LLC (LBH Holdings), a company newly created to become the parent company for LBH, and its subsidiary, LBH Holdco Corp. (LBH Holdco) pursuant to a Unit Purchase and Contribution Agreement (Purchase Agreement), in exchange for millions of dollars and membership units in LBH Holdings.

In the Purchase Agreement, the selling members of LBH represented "that the [Liberation companies] and its staff had always followed all applicable laws, that they had not engaged in activity in violation of Pennsylvania law governing rehabilitation facilities, and that they maintained all required records." (compl ¶ 58). These representations and warranties induced LBH Holdings and LBH Holdco to enter into the Purchase Agreement. As a result of the transaction, LBH became a wholly owned subsidiary of LBH Holdings.

In connection with this proposed transaction, defendant performed accounting services for the Liberation companies, including valuation, due diligence, and opening balance sheet corrections. However, in its April 2017 audit report and accounting work, defendant never investigated or considered the implications of the IBC audit.

Fulcrum and non-party Vocap Partners ultimately acquired the Liberation companies on December 11, 2017, contributing $12 million in cash and $29.6 million in funds loaned from Oxford Finance LLC (Oxford) and another bank, to purchase 70% of LBH Holdings. The $29.6 million loan was secured primarily by LBH's assets. The selling members of LBH maintained a 30% stake in LBH Holdings.

153725/2021   SEITZ, GARY F vs. MARCUM LLP
Motion No. 001

Page 3 of 10

3 of 10

After the Fulcrum transaction, Fulcrum selected new officers and directors to control and direct the Liberation companies, including a new CEO.

In January 2018, defendant began its audit and accounting services for year 2017 for the Liberation companies. During the audit, defendant learned of a material overstatement of net accounts receivable that it had missed in its 2016 audit and accounting services for the Fulcrum transaction. In addition, in reviewing the companies' legal bills, defendant became aware of a series of governmental investigations that placed them in jeopardy, such as an order from the Pennsylvania State Department of Drug and Alcohol Programs (DDAP) to cease patient intake at multiple locations due to problems discovered during its inspections, an investigation by the Pennsylvania Office of the Attorney General, and an order from the federal Drug Enforcement Agency regarding violations of federal regulations governing Narcotics Treatment Programs. Defendant also learned that the Liberation companies were in default of their Credit Agreement with Oxford, according to a notice of default received on July 6, 2018.

When defendant issued its 2017 audit report on August 8, 2018, it conducted no investigation into the government subpoenas or letter inquiries and never revisited findings from the IBC audit or Oxford's notice of default. Likewise, when defendant began its audit and accounting service for 2018 in January 2019, it did did not investigate or address any of these issues.

On March 25, 2019, the Pennsylvania Office of the Attorney General announced criminal charges against LBH and its former officers and directors. At or about that time, defendant informed LBH's new CEO that the Liberation companies should no longer rely on its audited financial statements. Defendant continued to perform audit and accounting services, including in

**153725/2021   SEITZ, GARY F vs. MARCUM LLP**
**Motion No. 001**

**Page 4 of 10**

[* 4]                                                    4 of 10

connection with the Attorney General's investigation, until the Liberation companies declared bankruptcy on April 17, 2019. Marcum never issued an audit report for 2018.

The Liberation companies declared bankruptcy on or about April 17, 2019, and plaintiff Seitz was appointed as the trustee of the bankruptcy estates of the Liberation companies.

On April 16, 2021, plaintiff commenced this action by filing a summons with notice. Plaintiff filed a complaint on May 20, 2021, asserting four causes of action for accounting malpractice, breach of fiduciary duty, breach of contract, and unjust enrichment with respect to defendant's audit and accounting services from 2016 to 2019.

On June 18, 2021, defendant filed the instant motion to dismiss the complaint. Plaintiff opposes the motion.

## II.    DISCUSSION

On a motion to dismiss under CPLR 3211 (a) (7), the court accepts the facts as alleged in the complaint as true, accords plaintiffs the benefit of any possible favorable inference, and determines only whether the facts as alleged fit within any cognizable legal theory (*see Leon v Martinez*, 84 NY2d 83 [1994]).

Defendant principally argues that the claims should be dismissed under the principle of in pari delicto. The doctrine of in pari delicto "bars a party that has been injured as a result of its own intentional wrongdoing from recovering for those injuries from another party whose equal or lesser fault contributed to the loss" (*Rosenbach v Diversified Group, Inc.*, 85 AD3d 569, 570 [1st Dept 2011]). The doctrine is available as a defense against all of the claims here (*see Kirschner v KPMG LLP*, 15 NY3d 446 [2010] [malpractice]; *Donovan v Rothman*, 302 AD2d 238 [1st Dept 2003] [breach of contract], *Gitlin v Chirinkin*, 121 AD3d 939 [2d Dept 2014] [breach of contract, breach of fiduciary duty, unjust enrichment]).

153725/2021   SEITZ, GARY F vs. MARCUM LLP
Motion No. 001

Page 5 of 10

Where a corporation seeks to impose liability on a defendant for its contribution to an injury wrought by the corporation's own officers or management, "[t]raditional agency principles play an important role in an in pari delicto analysis" (*Kirschner* at 465). In *Kirschner*, the Court of Appeals observed the "fundamental principle that has informed the law of agency and corporations for centuries" that "the acts of agents . . . while acting within the scope of their authority are presumptively imputed to their principals" (*id.*) As the "principal that selected the agent," "[a] corporation must, therefore, be responsible for the acts of its authorized agents even if particular acts were unauthorized," including acts of fraud (*id.*). Thus, acts of fraud by the officers of the corporation in the course of their corporate dealings "is in law the fraud of the corporation" (*id.*). This reflects the assessment that "the principal is generally better suited than a third party to control the agent's conduct" (*id.*).

The decision of the Court of Appeals in *Kirschner* comprehensively resolves this motion. Plaintiff has alleged that LBH's officers themselves engaged in fraud and other malfeasance (compl ¶¶ 28, 29), and those acts must be imputed to LBH. Further, plaintiff, as the trustee of the bankruptcy estates of the Liberation companies, stands in the shoes of the Liberation companies and has no greater rights than they would have if they had not filed for bankruptcy (*see Mediators, Inc. v Manney (In re Mediators, Inc.)*, 105 F3d 822, 826 [2d Cir 1997]). Therefore, defendant sufficiently demonstrates that, as a party in pari delicto, plaintiff is barred from bringing his claims stemming from the wrongful acts of the Liberation companies' directors and officers.

In opposition, plaintiff argues that a determination of whether in pari delicto should apply here requires a fact-intensive inquiry and is therefore premature in this motion, citing *Stokoe v Marcum & Kleigman LLP* (135 AD3d 645, 645 [1st Dept 2016]). However, as the Court of

153725/2021  SEITZ, GARY F vs. MARCUM LLP
Motion No. 001

Page 6 of 10

6 of 10

[* 6]

Appeals observed in *Kirschner*, "in pari delicto may be resolved on the pleadings . . . in an appropriate case" (*Kirschner* at 459, n 3). Plaintiff does not point to any factual dispute that would preclude dismissal on the basis of this doctrine and, indeed, its applicability is apparent on the face of his pleadings. Unlike in *Stokoe*, where the court found that defendants had failed to show fraudulent activity by plaintiffs' agent, here, it is plaintiff himself who has pleaded the officers' fraudulent activity.

Plaintiff also argues that the doctrine should not apply to its malpractice claim to the extent it is based in defendant's services unconnected to the Liberation companies' own fraud or misconduct (plaintiff's brief in opposition to mot at 16-17). He argues that the complaint

> "alleges specific wrongdoing by Defendant, including, *inter alia*, (i) Defendant's failure to design and apply basic audit procedures to obtain the audit evidence required to address the specific issues and risks facing the Company; (ii) Defendant's failure to perform its accounting function, in connection with the Company's transactions and other accounting matters, consistent with the standards of the accounting profession; (iii) Defendant's failure to adhere to several generally accepted auditing standards; (iv) Defendant's issuing an audit report without conducting an investigation or considering the results of the IBC audit, despite having knowledge of the IBC audit as early as March 2017" (*id.* at 17).

However, even putting aside that (i) and (iv) relate to wrongful conduct by the LBH's officers, (ii) and (iii) point only vaguely to "standards of the accounting profession" and "generally accepted auditing standards" without alleging any facts showing how defendant failed to fulfill an appropriate duty of care (*id.*). Without further details, these are no more than bare legal conclusions, which need not be presumed to be true (*see Strunk v NY State Bd. of Elections*, 126 AD3d 777, 778 [2d Dept 2015]).

Moreover, other parts of the complaint make clear that, even when plaintiff describes various failures in accounting, these are related to defendant's failure to properly investigate fraud and disclose fraud. Indeed, plaintiff alleges that defendant was negligent after the Fulcrum

153725/2021  SEITZ, GARY F vs. MARCUM LLP
Motion No. 001

Page 7 of 10

[* 7]

7 of 10

transaction by continuing to fail in investigating and disclosing the Liberation companies' fraud (compl ¶¶ 9, 10, 29). In addition, the alleged damages all arise from defendant's failure to detect the fraud (*id.* at 23). Indeed, as defendant points out, "[t]here is not a single allegation in the Complaint which suggests that Marcum's auditing services were negligent in any way other than in failing to detect the Company's own fraud. And there is no allegation that the Company's financial statements were inaccurate in any way other than as a result of the Company's fraud" (defendant's brief in reply at 8).

Finally, plaintiff argues that the "adverse interest" exception to in pari delicto should apply, such that the wrongful actions of the company's officers are not imputed to LBH. "Under this narrow exception, management misconduct will not be imputed to the corporation if the officer acted entirely in his own interest and adversely to the interest of the corporation" (*Symbol Tech., Inc. v Deloitte & Touche, LLP*, 69 AD3d 191, 197 [2d Dept 2009]). To avail himself of this exception, plaintiff must show that "the agent . . . totally abandoned his principal's interests and [acted] entirely for his own or another's purposes. It cannot be invoked merely because he has a conflict of interest or because he is not acting primarily for his principal" (*Kirschner* at 466).

Here, plaintiff argues that, because, because the Fulcrum transaction was "funded primarily through debt secured by the [Liberation companies'] assets" that the companies were "not in a financial position to take on," the officers and directors caused the Liberation companies to be "saddled with millions of dollars of debt," "leaving it in a worse position" (plaintiff's brief in opposition to mot at 14-15). Plaintiff also argues that "the officers and directors of [LBH] were the beneficiaries of the fraud" (*id.* at 15).

153725/2021   SEITZ, GARY F vs. MARCUM LLP
Motion No. 001

Page 8 of 10

However, as the Court of Appeals also observed in *Kirschner*, "[a] fraud that by its nature will benefit the corporation is not 'adverse' to the corporation's interests, even if it was actually motivated by the agent's desire for personal gain" (*Kirschner* at 467). "So long as the corporate wrongdoer's fraudulent conduct enables the business to survive—to attract investors and customers and raise funds for corporate purposes—this test is not met" (*id.* at 468). Moreover, "any harm from the discovery of the fraud—rather than from the fraud itself—does not bear on whether the adverse interest exception applies. The disclosure of corporate fraud nearly always injures the corporation" (*id.* at 469). In addition, pertinent to this case, "the mere fact that a corporation is forced to file for bankruptcy does not determine whether its agents' conduct was, at the time it was committed, adverse to the company" (*id.* at 468).

At the time of the Fulcrum transaction, it cannot be said that the officers and directors "totally abandoned [their] principal's interests and be act[ed] entirely for [their] own or another's purposes" (*id.* at 466). The transaction would have benefited the companies through the infusion of $12 million from Fulcrum and Vocap and $29.6 million in loans from Oxford. That the loan was secured by LBH's assets alone does not render the transaction in "adverse interest" to the Liberation companies. Indeed, the transaction may, at least before discovery of the officers' fraudulent acts, have permitted them to "survive," "attract investors and customers and raise funds for corporate purposes" for the time being (*id.* at 468).

Therefore, the complaint must be dismissed in its entirety under the doctrine of in pari delicto.

Because the complaint is dismissed pursuant to CPLR 3211 (a) (7), the court declines to assess whether it may be dismissed pursuant to CPLR 3211 (a) (5).

**153725/2021  SEITZ, GARY F vs. MARCUM LLP**
**Motion No. 001**

Page 9 of 10

**ORDERED** that defendant's motion is granted, and the complaint is dismissed in its entirety.

8/30/24
DATE

ROBERT R. REED, J.S.C.

| CHECK ONE: | [X] | CASE DISPOSED | [ ] | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | [X] | GRANTED | [ ] DENIED | [ ] | GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] | SETTLE ORDER | | [ ] | SUBMIT ORDER |
| CHECK IF APPROPRIATE: | [ ] | INCLUDES TRANSFER/REASSIGN | | [ ] | FIDUCIARY APPOINTMENT | [ ] REFERENCE |

153725/2021   SEITZ, GARY F vs. MARCUM LLP
Motion No.  001

Page 10 of 10